UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

**APR 0 6 2016**

CLERK

| | |
|---|---|
| DONALD LOREN ANDERSON,<br><br>Plaintiff,<br><br>vs.<br><br>DARREN YOUNG, SD STATE<br>PENITENTIARY, THE ATTORNEY<br>GENERAL OF THE STATE OF SOUTH<br>DAKOTA,<br><br>Defendants. | 4:15-CV-04098-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Petitioner, Donald Loren Anderson, an inmate at the South Dakota State
Penitentiary, has filed a *pro se* petition for writ of habeas corpus pursuant to
28 U.S.C. § 2254. The respondents have moved to dismiss Mr. Anderson's
petition. Docket 14. Mr. Anderson has moved for summary judgment in his favor.
Docket 11. The court has received for review pertinent portions of the state court
files, including transcripts from the jury trial and the state habeas records,
including the transcript of the state habeas evidentiary hearing. The matter has
been fully briefed and is now ripe for a decision.

Mr. Anderson was convicted in Davison County, South Dakota, and is
currently incarcerated pursuant to a judgment of a South Dakota state court.
These proceedings were referred to this magistrate judge pursuant to 28 U.S.C.
§ 636(b) and Judge Schreier's standing order dated October 16, 2014. The

pending matter is therefore properly before this court pursuant to 28 U.S.C. § 2254.

## FACTS AND PROCEDURAL HISTORY

The court has taken judicial notice of the file from Mr. Anderson's underlying criminal conviction, State v. Anderson, CR 11-281 (First Judicial Circuit, Davison County, South Dakota) affirmed by State v. Anderson, 831 N.W.2d 54 (S.D. 2013), and his state habeas proceedings (Anderson v. Young, CV 13-129, First Judicial Circuit, Davison County, South Dakota) affirmed by Anderson v. Young, Appeal No. 27048, South Dakota Supreme Court). See, Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).

## A. Conviction.

The facts which led to Mr. Anderson's conviction are gleaned from the state court jury transcripts.[1] They are as follows:

In May 11, 2011, Mr. Anderson, who was then 63 years old, lived in Mitchell, South Dakota. JT 63, 67. He met the victim in this case (KH) in February, 2011, through a friend. JT 9, 69. KH was a twelve-year-old boy who Mr. Anderson hired to do "odd jobs" such as raking, spraying weeds, and carrying

---

[1] References to the transcripts of the jury trial will be by JT and JT2 (JT 2 is the transcript of closing arguments). References to the transcript of the sentencing hearing will be by ST. References to the transcript of the state habeas hearing will be by HT.

2

laundry up and down the stairs. JT 8, 69. Mr. Anderson paid KH and usually also gave him ice cream or a candy bar. JT 69-70.

On May 11, 2011, Mr. Anderson picked KH up after school and drove to Anderson's house. JT 23-24. KH's job for the day was to spray dandelions in Mr. Anderson's yard. JT 24. KH estimated he spent about 30 minutes spraying dandelions, then went into Mr. Anderson's house. JT 26.

When KH went into the house, Mr. Anderson was installing a video game onto his computer. JT 26-27. Mr. Anderson pulled KH onto his lap. JT 28. KH sat on Mr. Anderson's lap and played the computer game. JT 28. KH told Mr. Anderson his foot was asleep. Id. Mr. Anderson used both hands to rub KH's leg for seven or eight seconds, then squeezed KH's penis for five or ten minutes. JT 30-31. This contact was through, or on top of KH's pants. Id. KH said this made him feel uncomfortable and scared. JT 30-31. Mr. Anderson then touched KH's back for about five seconds. JT 32.

Mr. Anderson gave KH $7.00, then got up and went to the bathroom. Id. He returned but sat on the couch to watch KH play the computer game. When Mr. Anderson went to go get his mail, KH logged off the computer. When Mr. Anderson returned, KH asked when he could go home. JT 33. Mr. Anderson took KH home about fifteen minutes later. Id. Mr. Anderson told KH the best part of his day was when KH sat on his lap, and that he wanted KH to go home and hug his pillow and think of him. JT 34. Mr. Anderson told KH he would get an "extra bonus" the next time he came back. JT 35.

KH went home and told his mother what happened at Mr. Anderson's house. JT 35. KH's mother called the police. JT 36. The Mitchell Police

3

Department (Detectives Russell and Frerichs) investigated the incident by interviewing Mr. Anderson, KH's mother, and KH. JT 45. Detective Russell recorded his approximately 15 minute-long interview with Mr. Anderson. JT 55. Ultimately, Mr. Anderson was charged in an indictment with sexual contact with a child under the age of sixteen years, in violation of SDCL § 22-22-7,[2] a Class 3 felony.

A jury trial was held on December 6, 2011. Mr. Anderson, KH, KH's mother, and Detective Russell testified at trial. Mr. Anderson was convicted.

---

[2] SDCL § 22-22-7 states:

### Sexual contact with minor under sixteen—Felony or misdemeanor

Any person, sixteen years of age or older, who knowingly engages in sexual contact with another person, other than that person's spouse if the other person is under the age of sixteen years is guilty of a Class 3 felony. If the victim is at least thirteen years of age and the actor is less than five years older than the victim, the actor is guilty of a Class 1 misdemeanor. Notwithstanding § 23A-42-2, a charge brought pursuant to this section may be commenced at any time before the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer.

SDCL § 22-22-7.1 defines "sexual contact" as that term is used in SDCL § 22-22-7. That statute states:

### Sexual contact defined--Exception when within the scope of medical practice.

As used in this chapter, the term, sexual contact, means any touching, not amounting to rape, whether or not through clothing or other covering, of the breasts of a female or the genitalia or anus of any person with the intent to arouse or gratify the sexual desire of either party. Practitioners of the healing arts lawfully practicing within the scope of their practice, which determination shall be conclusive as against the state and shall be made by the court prior to trial, are not included within the provisions of this section. In any pretrial proceeding under this section, the prosecution has the burden of establishing probable cause.

4

**B.     Direct Appeal.**

Mr. Anderson filed a direct appeal.  He raised the following issues on direct appeal:  (1) whether his arraignment was inadequate; and (2) whether the trial court abused its discretion in denying his motion for a new trial because it failed to enter a specific finding that KH was a competent witness.  On May 8, 2013, the South Dakota Supreme Court affirmed Mr. Anderson's conviction.  State v. Anderson, 831 N.W.2d 54 (S.D. 2013).

**C.     State Habeas Petition.**

Mr. Anderson filed a *pro se* handwritten state habeas petition.  Counsel was appointed for him, but did not file an amended state habeas petition.  Some of Mr. Anderson's *pro se* claims fell away or were consolidated with others when evidence was presented at the state habeas hearing.  See HT at 76-78.  The hearing was held on Mr. Anderson's state habeas claims on December 17, 2013. The Honorable Arthur Rusch, Circuit Court Judge for the First Judicial Circuit, presided.

Mr. Anderson and his criminal trial counsel testified.  Appointed habeas counsel explained during the state habeas hearing that she had discussed the prosecutorial misconduct claims raised in Mr. Anderson's *pro se* petition with Mr. Anderson.  She further explained they agreed to forego presenting evidence on the prosecutorial misconduct claims because in reality Mr. Anderson's dissatisfaction amounted to nothing more than a disagreement about the prosecutor's word choice during closing argument.  Judge Rusch indicated, however, that he would review the transcript of the jury trial and independently decide whether any prosecutorial misconduct occurred.  HT at 76-77.

5

The ineffective assistance claims which were actually presented to the

circuit court had several subparts.  Mr. Anderson alleged his counsel was

ineffective by:

>(a) failing to investigate whether the recording of his interview had been
>tampered with;
>(b) failing to adequately impeach KH on cross-examination with
>inconsistencies between his trial testimony and the video statement he gave
>to authorities;
>(c) failing to call a medical professional to testify about the effects of
>Mr. Anderson's erectile dysfunction; and
>(d) failing to call other children as character witnesses.

See generally, HT at pp. 6-55; Docket 13-13.

On December 22, 2013, Judge Rusch issued a Memorandum Opinion

denying each of Mr. Anderson's claims.  Docket 13-13.  Thereafter, on April 1,

2014, Judge Rusch denied Mr. Anderson's motion for a certificate of probable

cause.  Docket 13-14.

Through his appointed counsel, Mr. Anderson moved the South Dakota

Supreme Court for a certificate of probable cause.  Docket 13-17.  That motion

requested the South Dakota Supreme Court to review the following issues:

(1) Prosecutorial misconduct in closing arguments; and (2) Ineffective assistance of

counsel by:

>(a) failing to investigate whether the recording of his interview had
>been tampered with;
>(b) failing to adequately impeach KH on cross-examination with
>inconsistencies between his trial testimony and the video
>statement he gave to authorities;
>(c) failing to call a medical professional to testify about the effects
>of Mr. Anderson's erectile dysfunction; and
>(d) failing to call other children as character witnesses.

Id.  On June 12, 2014, the South Dakota Supreme Court denied

Mr. Anderson's motion for certificate of probable cause.  Docket 13-20.

6

## D.    Federal § 2254 Habeas Corpus Petition.

Mr. Anderson timely filed this federal habeas corpus action pursuant to

28 U.S.C. § 2254. In this petition, Mr. Anderson again raises two claims: (1)

ineffective assistance of counsel; and (2) prosecutorial misconduct. Mr. Anderson

attached to his § 2254 petition the same handwritten description of his claims he

initially filed in state court. In other words, it includes those prosecutorial

misconduct and ineffective assistance claims that were either consolidated or that

fell away as presented to Judge Rusch during the state habeas evidentiary

hearing.

As to the prosecutorial misconduct claim, Mr. Anderson alleges:

(a) the prosecutor lied to the jury when he told them Mr. Anderson
"massaged" KH's penis for sexual gratification;
(b) the prosecutor told the jury the Mr. Anderson lied about erectile
dysfunction;
(c) the prosecutor told the judge that Mr. Anderson was a "world
traveler" to persuade the judge to imprison Mr. Anderson;
(d) the prosecutor used tampered evidence (the audio compact disc
interview with Mr. Anderson); and
(e) the prosecutor corrupted the minor witness (KH) by telling him
what to say; there was no massage or rubbing of private parts.

As to ineffective assistance of counsel, Mr. Anderson asserts counsel was

ineffective in several ways:

(a) failing to object to the testimony by the minor witness;
(b) failing to interview Detective Frerichs about statements made
by the minor witness;
(c) failing to test the CD of Mr. Anderson's recorded interview for
evidence of tampering;
(d) failing to introduce medical evidence regarding Mr. Anderson's
erectile dysfunction;
(e) failing to introduce the videotaped interview of the minor victim;
(f) failing to object to prosecutor's statements about sexual
gratification;
(g) failing to allow Mr. Anderson to see or read the psychosexual
evaluation before sentencing;

7

**(h)** failing to call other children as character witnesses; and
**(i)** charging too much money.

**DISCUSSION**

**A.    Principles Generally Applicable to § 2254 Petitions.**

A state prisoner who believes he is incarcerated in violation of the
Constitution or laws of the United States may file a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by
the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a
"limited and deferential review of underlying state court decisions." Osborne v.
Purkett, 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a
writ of habeas corpus unless the state court's adjudication of a claim "resulted
in a decision that was contrary to, or involved an unreasonable application of,
clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision
is "contrary to" clearly established federal law if it "applies a rule that
contradicts the governing law set forth in Supreme Court cases or if it
confronts a set of facts that are materially indistinguishable from a decision of
the Court and nevertheless arrives at a result different from the Court's
precedent." Williams v. Taylor, 529 U.S. 362, 405-06, (2000).    A federal
habeas court may not issue the writ merely because it concludes the state
court applied the clearly established federal law erroneously or incorrectly. Id.
at 411. "Rather, that application must also be *unreasonable*." Id. (emphasis
added).

The state court's factual findings are presumed to be correct, and a
federal habeas court may not disregard the presumption unless specific

8

statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1045

(8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply

disagree with the state court's factual determinations. Instead it must

conclude that the state court's findings lacked even fair support in the record."

Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

## B.    State Court Exhaustion.

Federal habeas petitions collaterally attacking state court convictions are

governed by the Anti-terrorism and Effective Death Penalty Act (ADEPA).

Under ADEPA, federal habeas review of state court convictions is limited to

claims the petitioner previously presented to the state courts for consideration:

> (b)(1) An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted unless it appears that—
>> (A) the applicant has exhausted the remedies available in the
>> courts of the state; or
>> (B)     (i) there is an absence of available State corrective
>>       process; or
>>       (ii) circumstances exist that render such process
>>       ineffective to protect the rights of the applicant.
>
> * * *
>
> (c) An applicant shall not be deemed to have exhausted the
> remedies available in the courts of the State, within the meaning of
> this section, if he has the right under the law of the State to raise,
> by any available procedure, the question presented.
>
> See 28 U.S.C. § 2254(b) and (c).

"[T]he state prisoner must give the state courts an opportunity to act on

his claims before he presents those claims to a federal court in a habeas

petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). If a ground for

relief in the petitioner's claim makes factual or legal arguments that were not

present in the petitioner's state claim, then the ground is not exhausted.

Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991). The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings. Rose v. Lundy, 455 U.S. 509, 518 (1982). The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citation omitted). The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court. Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level. See 28 U.S.C. § 2254; Rose, 455 U.S. at 522. The exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995).

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context. Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding." Id. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

10

appellate review process." O'Sullivan, 526 U.S. at 845. "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993).

Fairly presenting a federal claim requires more than simply going through the state courts:

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971). It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim. Ashker, 5 F.3d at 1179. The petitioner must present both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295 at 297 (8th Cir. 1988) (citation omitted). "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " Ashker, 5 F.3d at 1179. This does not, however, require petitioner to cite "book and verse on the federal constitution." Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)). The petitioner must simply make apparent the constitutional substance of the claim. Satter, 977 F.2d at 1262.

11

A federal court may not adjudicate the merits of a habeas petition which contains both exhausted and unexhausted claims (a "mixed" petition). Rose, 455 U.S. at 515. The AEDPA one year statute of limitations, however, often results in claims which are time-barred after being dismissed without prejudice in federal court for failure to exhaust. A "stay and abeyance" procedure may be appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims. Rhines v. Weber, 544 U.S. 269, 277 (2005). No stay and abeyance is necessary, however, if the unexhausted claims are "plainly meritless." Id.; 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Finally, when it is obvious a federal habeas petitioner's unexhausted claims would be procedurally barred in state court due to a state-law procedural default, a district court may forego needless "judicial ping-pong" and treat those claims now barred by state law as providing no basis for federal habeas relief. The unexhausted claims should be treated as if procedurally defaulted. A petition should be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted. Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007).

South Dakota law provides that a habeas petitioner must raise all potential grounds for habeas relief in his first state habeas petition. SDCL § 21-27-16.1 provides:

12

### 21-27-16.1 Waiver of grounds for relief not raised in application.

All grounds for relief available to petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent application, unless the court finds ground for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental or amended application.

Procedural default of a claim under state law constitutes an adequate and independent state law ground that precludes federal review unless the prisoner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. Owen v. Weber, 2010 WL 4117147 at * 2 (D.S.D.) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).  Claims which have not been raised in either a petitioner's direct appeal or state habeas application are procedurally barred.  Whitepipe v. Weber, 536 F. Supp. 2d 1070, 1100 (D.S.D. 2007).  "This procedural bar provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."  Welch v. Lund, 616 F.3d 756, 760 (8th Cir. 2010) (citation omitted, punctuation altered).

Here, some of Mr. Anderson's claims were clearly **not** exhausted at the state level.  Mr. Anderson presented to the state habeas court several *pro se* claims which were not directly addressed during the state habeas hearing. Mr. Anderson acceded to this omission at the end of the hearing testimony,

13

when Judge Rusch asked him whether there were any other topics he wished to discuss, and he responded in the negative. HT at 55. Mr. Anderson's failure to seek a ruling on the issues he presented in his *pro se* petition defaulted those issues for purposes of appeal. Primeaux v. Dooley, 747 N.W.2d 137, 142 (S.D. 2008). In Primeaux, the state habeas petitioner submitted a habeas petition containing several issues, but at the circuit court level he failed to seek a ruling on one issue (the manner in which jurors were selected during his criminal trial). Id. at 142. The South Dakota Supreme Court rejected Mr. Primeaux's attempt to resurrect that issue on appeal, explaining "no error is preserved for review on appeal when the court below fails to rule on a matter presented for decision." Id.

Further, Mr. Anderson's counsel explained that, specifically as to the prosecutorial misconduct claims, she reviewed them and decided not to present any evidence because she believed they boiled down to Mr. Anderson's difference of opinion regarding the words used by the prosecutor. HT at 76. Though Judge Rusch indicated during the hearing that he would independently consider and rule upon the prosecutorial misconduct claims, those claims were consolidated into one in Judge Rusch's written decision, and Judge Rusch ultimately dismissed that claim as meritless. See Docket 13-13 at p. 8.

Following the state habeas court's denial of his habeas petition and denial of a certificate of probable cause, Mr. Anderson requested a certificate of probable cause from the South Dakota Supreme Court on four of his ineffective

14

assistance claims and one prosecutorial misconduct claim.  See SDCL § 21-27-

18.1.  South Dakota law is clear that the certificate of probable cause must

specify exactly which issues the petitioner wishes to appeal in order to properly

preserve them.   Lange v. Weber, 602 N.W.2d 273, 276 (S.D. 1999).  In Lange

the South Dakota Supreme Court explained:

> In order to stave off the increasing burden of frivolous appeals in
> post-conviction proceedings, we hereby adopt the standard
> followed in the federal court system.  We interpret SDCL
> § 21-21-18.1 to mean that if the trial court denies an application in
> a habeas claim, it must either issue a certificate of probable cause
> or state why a certificate should not issue.  A specific showing of
> probable cause must be articulated on the certificate in order to
> confer jurisdiction on this Court to review the denial of a habeas
> corpus petition.  The certificate must make a "substantial showing
> of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In
> addition, the certificate must indicate which specific issue or
> issues satisfy the showing of the denial of a constitutional right.

Id. at 276.  Thus, in Mr. Anderson's case, the South Dakota Supreme Court

was deprived of the opportunity to review the merits of all but the five claims

which were listed in the motion for certificate of probable cause.

Normally, the appropriate action for a federal court faced with

unexhausted claims would be to dismiss the petition without prejudice to allow

the petitioner to exhaust his state remedies.  Carmichael v. White, 163 F.3d

1044, 1045 (8th Cir. 1998).  However, such dismissal is not an appropriate

course of action where there are no nonfutile avenues of relief available to the

petitioner in state court.  Here, because Mr. Anderson raised but abandoned in

state court the issues he now wishes to resurrect, no further avenues of

nonfutile relief are available to Mr. Anderson in state court.  See

15

SDCL § 21-27-18.1; Primeaux, 747 N.W.2d at 142. Thus, the court turns to the question of procedural default.

## C. Procedural Default.

### 1. Mr. Anderson Has Procedurally Defaulted Several of His Claims.

Closely related to the doctrine of state court exhaustion is the doctrine of procedural default. Both doctrines are animated by the same principles of comity—that is, in our dual system of government, federal courts should defer action on habeas matters before them when to act on those petitions would undermine the state courts' authority, which have equal obligations to uphold the constitution. See Coleman, 501 U.S. at 731 (quoting Rose, 455 U.S. at 518, overruled in part on other grounds by Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309 (2012),[3] superseded in part on other grounds by statute as recognized in Duncan v. Atchison, 2014 WL 4062737 (N.D. Ill. Aug. 13, 2014)). While the exhaustion rule asks *whether* a petitioner has exhausted his remedies in state court, the procedural default rule asks whether the petitioner has *properly* exhausted those remedies—"whether he has fairly presented his claims to the state courts." O'Sullivan, 526 U.S. at 848.

Procedural default is sometimes called the "adequate and independent state grounds" doctrine. A federal habeas petitioner who has defaulted his

---

[3] The Martinez decision modified that part of the Coleman decision involving whether ineffective assistance of habeas counsel can constitute "cause" excusing a procedural default. See Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012) (holding that, where state law required that ineffective assistance of counsel claims may not be raised until habeas proceedings, ineffectiveness of habeas counsel may supply "cause" sufficient to excuse a procedural default). Martinez is discussed more fully below.

16

federal claims in state court by failing to meet the state's procedural rules for presenting those claims, has committed "procedural default." Coleman, 501 U.S. at 731-32, 735 n.1. If federal courts allowed such claims to be heard in federal court, they would be allowing habeas petitioners to perform an "end run" around state procedural rules. Id. However, where no further non-futile remedy exists in state court, it is not feasible to require the petitioner to return to state court as would be the case in a dismissal for failure to exhaust state remedies.

In the Coleman case, the habeas petitioner, Coleman, had defaulted all of his federal claims by filing his notice of appeal from the state trial court three days late. Coleman, 501 U.S. at 727-28, 749. The state appellate court then refused to hear Coleman's appeal on the basis of his late-filing of his notice of appeal. Id. at 740. The Court held "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 750. See also Ruiz v. Norris, 71 F.3d 1404, 1409 (8th Cir. 1995) ("A district court need not consider the merits of a procedurally defaulted claim.") (citations omitted). To fit within the fundamental miscarriage of justice exception, the petitioner must make a showing of actual innocence. Schlup v. Delo, 513 U.S. 298, 321, (1995). A successful claim of actual innocence

17

requires the petitioner to support his allegations with new, reliable evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997).

"Adequate and independent state grounds" exist for the state court's decision if the decision of the state court rests on state law ground that is independent of the federal question and adequate to support the judgment. Coleman, 501 U.S. at 729. "This rule applies whether the state law ground is substantive or procedural." Id. at 729. "[A] state procedural ground is not adequate unless the procedural rule is strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988).

"The federal court looks to the last, reasoned state court opinion dealing with the claim to determine whether a specific contention is procedurally defaulted. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar that might otherwise have been available." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) (citations omitted).

Some of the claims Mr. Anderson asserts in this, his federal § 2254 petition, mirror the claims he procedurally defaulted in his *pro se* state habeas petition. In some limited instances Martinez v. Ryan allows a *pro se* petitioner to make a showing of "cause" for procedural default under circumstances that were previously not recognized. This, however, is not one of those circumstances.

18

## 2. Martinez Does Not Apply To Show "Cause" For Procedural Default Of The Grounds Raised In This § 2254 Petition.

A state procedural default bars federal habeas review unless the petitioner can demonstrate "cause" for the default *and* actual prejudice as a result of the violation of federal law. Maynard v. Lockhart, 981 F.2d 981, 984 (8th Cir. 1992) (citations omitted, emphasis added). If no "cause" is found, the court need not consider whether actual prejudice occurred. Id. at 985; Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) (citations omitted). "The requirement of cause . . . is based on the principle that petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief . . ." Cornman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992). The habeas petitioner must show that "some objective factor *external to [petitioner]* impeded [his] efforts." Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis added).

A petitioner may show cause by demonstrating that the factual or legal basis for a claim was not reasonably available to the petitioner at the time or that there was interference by officials which prevented the petitioner from exhausting his state remedies. Murray, 477 U.S. at 488. A petitioner's lay status, *pro se* status, and lack of education are not sufficient cause to excuse a procedural lapse in failing to pursue state court remedies. See Stewart v. Nix, 31 F.3d 741, 743 (8th Cir. 1994); Smittie, 843 F.2d at 298. Illiteracy or low intelligence are also not enough to demonstrate cause. See Criswell v. United States, 108 F.3d 1381, *1 (8th Cir. 1997) (unpub'd.); Cornman, 959 F.2d at

19

729. Finally, neither is ignorance of the law. Maxie v. Webster, 978 F.2d 1264, *1 (8th Cir. 1992) (unpub'd.).

If a prisoner cannot raise a claim of ineffective assistance of counsel in his direct appeal, and he was not given counsel in state habeas proceedings–or his state habeas counsel was him or herself ineffective–then procedural default does not bar a federal habeas court from hearing the prisoner's ineffective assistance claims. Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1318 (2012). The Court recognized a narrow exception to the unqualified statement in Coleman, to the effect that the ineffectiveness of state habeas counsel does not provide cause to excuse a procedural default. The Martinez Court held that inadequate assistance of counsel at the state habeas proceedings may establish cause. Martinez, 132 S.Ct. at 1318. The Court distinguished Coleman on the basis that the error of the state habeas lawyer in that case was *on appeal* from the trial state habeas court's decision. Id. at 1319. This is different than making an error *before the state trial habeas court itself*, rather than before an appellate state habeas court.   Id.

Martinez announced a 'narrow exception' to the Coleman rule:

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Dansby v. Hobbs, 766 F.3d 809, 828 (8th Cir. 2014) (citing Martinez, 132 S. Ct. at 1320). In Trevino v. Thayer, 133 S. Ct. 1911 (2013), the Supreme Court expanded Martinez to apply to situations where "state procedural framework,

20

by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Dansby, 766 F.3d at 829 (citing Trevino, 133 S. Ct. at 1921). It appears that South Dakota is such a state. See e.g., State v. Craig, 850 N.W.2d 828, 838 (S.D. 2014) ("ineffective assistance of counsel claims are generally not considered on direct appeal, because it is only through habeas corpus that a sufficient record can be made to allow the appropriate review.") (other citations omitted).

Mr. Anderson did not clearly articulate in his § 2254 petition that he believes his state habeas counsel was ineffective for failing to pursue some of his *pro se* ineffective assistance theories regarding his trial counsel's performance. See Docket 1. And, despite his indication to Judge Rusch at the close of the evidence in the state habeas hearing that there was nothing else he wished to present, Mr. Anderson explained in a letter to this court that his state habeas counsel "refused to document my claims in state court. I also am filing an incompetence assistance complaint with state bar." See Docket 7. Out of an abundance of caution and liberally construing Mr. Anderson's *pro se* § 2254 petition, therefore, the court will assume he intends to assert his procedural default should be excused by his state habeas counsel's ineffectiveness.

The ineffective assistance claims Mr. Anderson asserted in state court, even though they might otherwise fit within the Martinez framework for establishing cause, are nevertheless procedurally defaulted in this federal

forum. This is because <u>Martinez</u> requires that in order to qualify for the narrow "cause" exception, ineffective assistance claims must be "substantial" (i.e. they must have some possible merit). <u>Martinez</u>, 132 S. Ct. at 1319. If a claim "does not have any merit or . . . is wholly without factual support . . ." then the exception does not apply. <u>Id.</u>

The state habeas court addressed three of Mr. Anderson's current ineffective assistance claims (identified as claims (c), (d) and (h) on pages 7-8 of this opinion): failure to test the CD of Mr. Anderson's interview for tampering, failure to introduce expert evidence about erectile dysfunction and failure to call character witnesses. <u>See</u> Docket 13-13. The state habeas court decided those claims were meritless. No evidence was presented regarding Mr. Anderson's remaining ineffective assistance claims. When Judge Rusch gave Mr. Anderson the opportunity, however, Mr. Anderson did not even mention the omitted ineffective assistance claims. More importantly, as explained below, the omitted ineffective assistance claims were insubstantial.

Mr. Anderson's first procedurally defaulted ineffective assistance claim (identified as claim (a) on page seven of this opinion, above) is that trial counsel failed to object to the testimony of KH, or failed to "have him tested for truthfulness." The South Dakota Supreme Court, however, rejected a related claim on direct appeal. <u>State v. Anderson</u>, 831 N.W.2d 54, 58-59 (S.D. 2013).

On direct appeal, the South Dakota Supreme Court considered whether Mr. Anderson should have received a new trial because the trial court did not enter a specific finding that KH was competent to testify. <u>Id.</u> at 58. The court

22

rejected this claim, noting "every person is competent to be a witness except as otherwise provided in chapters 19-9 to 19-18, inclusive." Id. (citing SDCL § 19-14-1 (Rule 601)).[4] "And, 'there is no general rule regarding a child's inherent reliability nor is there any arbitrary age at which a child is deemed competent to testify.' " Id. (citing State v. Carothers, 724 N.W.2d 610, 616 (S.D. 2006)). Further, the court noted Mr. Anderson did not object to KH's competency to testify at trial, so the trial court was "left with the general rule that every person is competent to be a witness unless otherwise provided by statute." Id. at 58-59.

A review of the transcript from Mr. Anderson's criminal trial reveals that when KH took the stand to testify, the prosecutor began by asking questions about the importance of telling the truth. JT at 16. The following exchange occurred:

| Prosecutor: | Now, we've met a few times and talked about the fact that you were going to have to testify, right? |
|---|---|
| KH: | Yes. |
| Prosecutor: | What did I tell you was the single most important thing you needed to do today when you were sitting in that chair? |
| KH: | The truth. |

---

[4] The court notes SDCL § 19-16-38, which requires an *out of court* statement regarding sexual abuse, if made by a child under the age of ten, or a child ten or older who is developmentally disabled, may not be admitted into evidence unless the trial court first finds the statement is sufficiently reliable. That statute is inapplicable in this instance, however because KH was thirteen at the time of trial. JT at 16. Additionally, though KH testified at trial, the statement he gave to law enforcement was not introduced into evidence.

| Prosecutor: | The truth. It's important we talk about that because you're 13 years old, so we need to make sure you understand what that means. Do you understand the difference between the truth and a lie? |
| --- | --- |
| KH: | Yes. |
| Prosecutor: | All right. Could you, in your own words, tell us what the truth means to you? |
| KH: | Truth means that it's real. |
| Prosecutor: | That it's real. Maybe I'll give you an example. If I—if I were to say to you that I'm wearing a pink sports coat today, would that be the truth or a lie? |
| KH: | Lie. |
| Prosecutor: | Why not? |
| KH: | Because you're not wearing it. |
| Prosecutor: | Because I'm not wearing a pink sports coat. All righty. And that's all you need to do today is tell the truth, right? |
| KH: | Yep. |

JT at 16-17.

There is no indication KH did not understand the questions throughout the remainder of direct and cross-examination. JT 15-42. Though Mr. Anderson is critical of his counsel for failing to object, he does not identify any particular part of KH's testimony which indicates KH was not competent to testify. For these reasons, Mr. Anderson fails to establish cause for his procedural default of this issue because he does not allege a "substantial" claim of ineffective assistance of trial counsel as required by Martinez.

24

Mr. Anderson's second procedurally defaulted ineffective assistance claim (identified as claim (b) on page seven of this opinion, above), is that trial counsel failed to interview Detective Frerichs about statements made by KH.

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense." Strickland v. Lee, 471 F.Supp.2d 557, 617 (W.D. N.C. 2007). Instead, to prove prejudice, Mr. Anderson must show the uncalled witness would have testified in his defense, that his testimony would have been favorable, and that his testimony "probably would have changed the outcome of the trial." See Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990); Stewart, 31 F.3d at 744. In assessing ineffective assistance claims under the Stricklandv. Washington, 466 U.S. 668 (1984) standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered). The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." Id. (citations omitted, punctuation altered).

Mr. Anderson does not show interviewing Detective Frerichs or calling him as a witness at trial would have changed the outcome of his case. During the state habeas hearing, trial counsel testified he did not believe there were inconsistencies between the police reports and the KH's video-taped interview. HT at 12-14. This court is left to speculate about what effect, if any at all, Mr.

Anderson's proposed actions would have had upon the criminal trial, had his trial counsel undertaken them. "Complaints of uncalled witnesses are not favored . . . because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). "[T]he petitioner ordinarily should explain . . . with some precision, the content of the testimony they would have given at trial." Lawrence, 900 F.2d at 130.

Mr. Anderson has not shown how his trial counsel's failure to interview or call Detective Frerichs as a witness would have been favorable and/or changed the outcome of his criminal trial. Lawrence, 900 F.2d at 130. For this reason, Mr. Anderson fails to establish cause for his procedural default of this issue because he does not allege a "substantial" claim of ineffective assistance of trial counsel as required by Martinez.

Mr. Anderson's third procedurally defaulted ineffective assistance claim (identified as claim (e) on page eight of this opinion, above) is that his trial counsel was ineffective for failing to introduce KH's video-taped interview at trial. KH testified at trial, so the video tape would have only served to give the jury another chance to hear his version of events. The court cannot conceive of any reason viewing the tape of KH's interview would have been beneficial to Mr. Anderson unless it contained significant inconsistencies which could be used to impeach KH's trial testimony. Mr. Anderson's trial counsel testified at the state habeas hearing that he did not perceive any significant inconsistencies between KH's videotaped interview and the police report. HT at 13. When asked what he perceived as inconsistencies, Mr. Anderson explained

26

the police report said he'd "touched" KH's penis for five minutes but the word "massaged" was used in the video-taped interview. HT at 37. At trial, KH testified Mr. Anderson "squeezed" his penis for five or ten minutes. JT at 39.

In ruling on a related claim, the state habeas judge found Mr. Anderson's trial counsel was not ineffective for failing to adequately impeach KH on inconsistencies between the police report, the video-taped interview, and KH's trial testimony, because there simply were not any material inconsistencies. Docket 13-13 at p. 6-7. The state court's factual findings are presumed to be correct, and a this court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone, 137 F.3d 1045; 28 U.S.C. § 2254(e). This court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall, 459 U.S. 432 (1983).

Additionally, trial counsel's refusal to play KH's video-taped interview for the jury despite Mr. Anderson's misguided belief that it would have been beneficial to him was a strategic decision. This court must presume trial counsel was effective, and must give his strategic choices great deference. Boyd, 274 F.3d at 502. For these reasons, Mr. Anderson fails to establish cause for his procedural default of this issue because he does not allege a "substantial" claim of ineffective assistance of trial counsel as required by Martinez.

Mr. Anderson's fourth procedurally defaulted ineffective assistance claim (identified as claim (f) on page eight of this opinion) is that his trial counsel was

27

ineffective for failing to object to the prosecutor's statements about sexual gratification. In his closing argument, Mr. Anderson's counsel suggested the state had not proven an element of the crime—intent to arouse or gratify sexual desire—because Mr. Anderson suffered from erectile dysfunction. JT2 at p. 11. In his closing argument, the prosecutor argued Mr. Anderson fondled KH "for his own sexual gratification." Id. at p. 7. The prosecutor also argued Mr. Anderson's intent was to sexually gratify himself. Id. at 14.

Regarding Mr. Anderson's theory he could not be sexually gratified because of his erectile dysfunction, the prosecutor reminded the jury that if they did not believe any of Mr. Anderson's other testimony, they could likewise disbelieve Mr. Anderson's claim that he suffered from erectile dysfunction. Id. The prosecutor went on to explain, however, that Mr. Anderson's erectile dysfunction claim was really irrelevant because an erect penis was not necessary to prove the crime with which Mr. Anderson had been charged. Id.

When he addressed the merits of a related claim, the state habeas judge went to great lengths to explain why Mr. Anderson's erectile dysfunction was not relevant to his capability to have sexual contact with KH, as that term is used in SDCL § 22-22-7. See Docket 13-13 at p. 7. In a nutshell, Judge Rusch explained that sexual gratification, as the term is defined in SDCL § 22-22-7.1 "deals with the mental or psychological state, not necessarily his physical state." Id.[5] This mental process can be established by circumstantial

---

[5] When contacted by Mr. Anderson's lawyer to discuss the effect of Mr. Anderson's erectile dysfunction upon the then pending criminal charges against him, Mr. Anderson's physician was a little more blunt. At the state

evidence.  People in the Interests of W.Y.B., 515 N.W.2d 453, 455 (S.D. 1994).
See also Yellow Hawk v. United States, 314 F. Supp. 2d 921, 933-34 (D.S.D.
2004) (counsel not ineffective for failing to procure evidence of his client's
impotence when impotence would not have proven he was incapable of the sex
crime with which he was charged).

In considering ineffective assistance claims, the court addresses not what
is prudent or appropriate, but only what is "constitutionally compelled."
Whitmore v. Lockhart, 8 F.3d 614, 631 (8th Cir. 1993) (citation omitted).
Mr. Anderson must show more than his trial counsel's alleged error had "some
conceivable effect on the outcome of the proceeding because not every error
that conceivably could have influenced the outcome undermines the reliability
of the result of the proceeding."  Id. (quoting Strickland, 466 U.S. at 693).
Further, failure to file a motion that has little chance of success fails to meet
Strickland's deficient performance or  prejudice requirements.  Hale v.
Lockhart, 903 F.2d 545, 549 (8th Cir. 1990).

Mr. Anderson's counsel was not ineffective for failing to object to the
prosecutor's closing argument regarding sexual gratification, therefore, because
any such objection would surely have been overruled.  For these reasons,
Mr. Anderson fails to establish cause for his procedural default of this issue
because he does not allege a "substantial" claim of ineffective assistance of trial
counsel as required by Martinez.

habeas hearing, Mr. Anderson's lawyer explained why he decided not to call the
physician as a witness during Mr. Anderson's criminal trial: "If I remember
correctly the words she used were, 'just because he can't get it up doesn't mean
he doesn't have the desire.' " HT at 16.

29

Mr. Anderson's fifth procedurally defaulted ineffective assistance claim
(identified as claim (g) on page eight of this opinion, above) is that his trial
counsel was ineffective for failing to allow Mr. Anderson to see or read the
psychosexual evaluation before sentencing. During the sentencing hearing,
however, Judge O'Brien asked whether trial counsel and Mr. Anderson had
reviewed the pre-sentence and psychosexual report. ST at 3. Trial counsel
responded affirmatively, then indicated Mr. Anderson wished to speak to the
judge. Id. Mr. Anderson addressed the court, but did not disagree with
counsel's representation regarding review of the psychosexual report. Instead
Mr. Anderson asked about how to get a court-appointed attorney for purposes
of pursuing his direct appeal (Mr. Anderson hired his trial counsel). ST at 4-5.

South Dakota law requires a defendant be allowed to view and comment
upon the contents of his pre-sentence report before sentencing.
SDCL § 23A-27-7. South Dakota law further provides that the contents of the
pre-sentence report include a psycho-sexual evaluation for convicted sex
offenders. SDCL § 22-22-1.3. Those two statutes are reproduced below:

### 23A-27-7. (Rule 32(c)(3)(A)) Parties' access to presentence report before sentence imposed--Material kept from defendant--Comments and other evidence received.

Before imposing sentence a court shall disclose the report of the
presentence investigation to the defendant, the defendant's
counsel, if represented by counsel, and the prosecuting attorney,
but the court may exclude any recommendation as to sentence,
and other material that, in the opinion of the court, contains a
diagnostic opinion which might seriously disrupt a program of
rehabilitation, sources of information obtained upon a promise of
confidentiality, or any other information which, if disclosed, might
result in harm, physical or otherwise, to the defendant or other
persons. The court shall afford the defendant, the defendant's
counsel, or the prosecuting attorney an opportunity to comment

30

thereon and, in the discretion of the court, to introduce testimony
or other information relating to any alleged factual inaccuracy
contained in the presentence report.

### 22-22-1.3.   Contents of presentence investigation report for person convicted of sex crime.

Any person convicted of a felony violation as provided in
subdivisions 22-24B-1(1) to (15), inclusive, and (19) shall have
included in the offender's presentence investigation report a
psycho-sexual assessment including the following information: the
offender's sexual history; an identification of precursor activities to
sexual offending; intellectual, adaptive and academic functioning;
social and emotional functioning; previous legal history; previous
treatment history; victim selection and age; risk to the community;
and treatment options recommended. If a presentence
investigation is not prepared, the court shall order a psycho-sexual
assessment which shall be made available to the court prior to
sentencing. If the offender is sentenced to the state penitentiary,
the psycho-sexual assessment shall be attached to the official
statement and supplied to the Board of Pardons and Paroles and
the warden.

Accepting as true Mr. Anderson's claim he did not review the

psychosexual report, he has not explained to this court how his review of the

report before his sentence was imposed would have changed the sentence he

received.  While South Dakota law requires disclosure of the pre-sentence

report to the defendant before sentence is imposed, "[a] federal court may not

issue the writ on the basis of a perceived error of state law." Pulley v. Harris,

465 U.S. 37, 41 (1984).

In other words, Mr. Anderson has not shown prejudice resulted from the

alleged error.  No due process violation arises in the absence of a showing of

prejudice. Donnelly v. DeChistoforo, 416 U.S. 637, 648, (1974); Pickens v.

Lockhart, 4 F.3d 1446, 1453-54 (8th Cir. 1993).   See also United States v.

Esparza-Gonzalez, 268 F.3d 272, 274 (5th Cir. 2001) (regarding similar Fed. R.

31

Crim. P. 32(c) "remanding where no prejudice exists would require the district court to undergo an exercise in futility in order to obtain the same sentence.").

For these reasons, Mr. Anderson fails to establish cause for his procedural default of this issue because he does not allege a "substantial" claim of ineffective assistance of trial counsel as required by Martinez.

Mr. Anderson's final procedurally defaulted ineffective assistance claim (identified as claim (h) on page eight of this opinion, above) is that his trial counsel charged too much money for his services. Mr. Anderson elaborates that "[counsel] took $6,500 from me and did nothing. He returned $500. I feel he stole $6,000." See Docket 1, p. 16.

First, the court notes that though Mr. Anderson is not happy with the result, his trial counsel did more than "nothing." See Docket 13-21. And "trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful." Flieger v. Delo, 16 F.3d 878, 886 (8th Cir. 1994) (citation omitted). Finally, Mr. Anderson's unhappiness with his trial counsel's fees simply does not state a Sixth Amendment claim for ineffective assistance. "A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Engle v. Isaac, 456 U.S. 107, 119 (1982). "However, the setting or collection of attorney fees is not a claim of ineffective assistance of counsel. The Sixth Amendment does not require this court to evaluate the fee amounts charged in each case and to determine if clients were overcharged." Thomson v. United States, 2010 WL 2010525 at *6 (W.D. Mo., May 18, 2010).

32

For these reasons, Mr. Anderson fails to establish cause for his procedural default of this issue because he does not allege a "substantial" claim of ineffective assistance of trial counsel as required by <u>Martinez</u>.

The respondents correctly assert that Mr. Anderson's prosecutorial misconduct claims (c), (d) and (e) are procedurally defaulted. The court observes <u>Martinez</u> is altogether inapplicable to those claims because they ***are not*** ineffective assistance of counsel claims to which <u>Martinez</u> is potentially applicable. Mr. Anderson has not, therefore, shown cause for his procedural default of prosecutorial misconduct claims (c), (d) and (e).

## 3. Mr. Anderson has not presented evidence of his actual innocence.

Mr. Anderson also fails to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (Petitioner must present new evidence that affirmatively demonstrates he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception). As a result, Mr. Anderson's ineffective assistance claims (a), (b), (e), (f), (g) and (i) and prosecutorial misconduct claims (c), (d) and (e) are procedurally defaulted and should be denied.

Mr. Anderson has given the state courts a full and fair opportunity to resolve the federal constitutional issues presented as to the five issues he cited in his certificate of probable cause to the South Dakota Supreme Court. As to those claims, Mr. Anderson has invoked one full round of South Dakota's established appellate review process. Those claims, therefore, are properly

before this court. O'Sullivan, 526 U.S. at 845. They are discussed on the merits below.

## D.     Mr. Anderson's § 2254 Claims.

### 1.     First Claim For Relief: Prosecutorial Misconduct In Closing Arguments.

This issue is cited in Docket 1 at p. 15. The state habeas judge reviewed the comments which Mr. Anderson believed constituted misconduct.[6] The comments Mr. Anderson found objectionable were that Mr. Anderson had committed the acts of which he was accused (i.e. massaged KH's penis) for his own sexual gratification. Docket 13-13 at 9. The state habeas judge noted "Anderson makes this argument in reliance on his theory that sexual gratification requires evidence of climax or ejaculation. As pointed out above, that is incorrect." Id. (citing People in Interests of W.Y.B., 515 N.W.2d at 455).

The state habeas judge explained that though Mr. Anderson's position was that the incident simply did not occur, KH testified otherwise and the prosecutor was entitled to argue the evidence as it was presented by the state's witnesses. Docket 13-13 at 9. The state habeas judge also explained unless anything the prosecutor said "so infected the trial with unfairness as to make the resulting conviction a denial of due process," Mr. Anderson could not prevail on his prosecutorial misconduct claim. Docket 13-13 at p. 8. (citing Donnelly, 416 U.S. at 643.

---

[6] The state habeas judge did not have the benefit of the transcript of closing arguments when he issued his decision. Docket 13-13 at 8. Closing arguments have since been transcribed and are available for this court's review. See JT 2.

"As a general rule, prosecutorial misconduct does not merit federal habeas relief unless the misconduct infected the trial with enough unfairness to render a petitioner's conviction a denial of due process." Stringer v. Hedgepeth, 280 F.3d 826, 829 (8th Cir. 2002) (citing Louisell v. Dir. Of Iowa Dept. of Corrections, 178 F.3d 1019, 1023 (8th Cir. 1999)). "To amount to a due process violation, improper remarks by a prosecutor must be 'so egregious that they fatally infect the proceedings and render a defendant's entire trial fundamentally unfair." Id. (citation omitted). The petitioner must show a reasonable probability that but for the misconduct, "the verdict probably would have been different." Id. (citing Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

The court has reviewed the transcript of the closing arguments in Mr. Anderson's criminal trial (JT 2). The prosecutor made no egregious remarks, and in fact made no improper remarks. This court agrees with the state habeas court's finding that Mr. Anderson's prosecutorial misconduct theory relied upon his misguided belief that successful sexual performance on his part was a prerequisite to guilt of sexual contact under SDCL § 22-22-7. That theory, however, has no support in the law. People in Interests of W.Y.B., 515 N.W.2d at 455; Yellow Hawk, 314 F.Supp.2d at 933-34. As such, Mr. Anderson cannot show that but for the prosecutor's misconduct, the result of the trial probably would have been different, and there has been no denial of Mr. Anderson's due process rights. Stringer, 280 F.3d at 829.

35

Having reviewed the trial transcripts, the state habeas transcript, and the written decision of the state habeas court, this court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. It is therefore recommended that Mr. Anderson's first claim for relief be denied and that no certificate of appealability be issued.

## 2.  Second Claim For Relief:  Ineffective Assistance Of Counsel For Failing To Adequately Impeach KH's Testimony.

This issue is cited in Docket 1 at p. 16.[7] Mr. Anderson asserts his trial counsel should have more vigorously cross-examined KH at trial about the perceived inconsistencies between KH's initial statements to law enforcement and his statements at trial. Docket 13-17.

All of Mr. Anderson's § 2254 ineffective assistance claims implicate his Sixth Amendment right to assistance of counsel. To successfully maintain a claim for ineffective assistance of counsel, a habeas petitioner must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. Strickland, 466 U.S. at 687. The Strickland Court explained, however that

[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in [any particular] order or even to address both components of the inquiry if the defendant makes an

---

[7] Mr. Anderson does not use the word "impeach" in Docket 1 at p. 16. He refers to his counsel failing to object to KH's testimony and also refers to his counsel failing to refer to evidence which would have showed the state investigators "corrupted" KH's testimony by telling him what to say. The court believes this is sufficient to preserve the issue. Additionally, the issue is specifically stated in Mr. Anderson's motion for certificate of probable cause to the South Dakota Supreme Court. Docket 13-17.

insufficient showing on one. In particular, a court need not
determine whether counsel's performance was deficient before
examining the prejudice suffered by the defendant as a result of the
alleged deficiencies. The object of an ineffectiveness claim is not to
grade counsel's performance. If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice,
which we expect will often be so, that course should be followed.

Id. at 697.

To show prejudice, Mr. Anderson must show that "there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." Id. at 694. Because hindsight analysis is
problematic, courts "indulge a strong presumption that counsel's conduct falls
within the wide range of professional assistance." Staples, 410 F.3d at 488.
Decisions involving trial strategy are therefore "virtually unchallengeable." Link v.
Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). Counsel's failure to file a motion
that has little chance of success fails to meet Strickland's deficient performance or
prejudice requirements. Hale, 903 F.2d at 549. It is with these general principles
in mind that each of Mr. Anderson's ineffective assistance claims have been
considered.

During the state habeas hearing, trial counsel testified he did not believe
there were inconsistencies between the police reports and the KH's video-taped
interview. HT at 12-14. When asked what he perceived as inconsistencies,
Mr. Anderson explained the police report said he'd "touched" KH's penis for five
minutes but the word "massaged" was used in the video-taped interview. HT at
37. At trial, KH testified Mr. Anderson "squeezed" his penis for five or ten
minutes. JT at 39.

37

In ruling on Mr. Anderson's ineffective assistance claims, the state habeas judge began by citing the Strickland two-prong test, and noting that "judicial scrutiny of counsel's performance must be highly deferential." Docket 13-13 at p. 3, 6 (citing Strickland, 466 U.S. at 689).

The state habeas judge found Mr. Anderson's trial counsel was not ineffective for failing to adequately impeach KH on inconsistencies between the police report, the video-taped interview, and KH's trial testimony, because there simply were not any material inconsistencies. Docket 13-13 at p. 6-7. The state court's factual findings are presumed to be correct, and this court may not disregard the presumption unless specific statutory exceptions are met. Thatsaphone, 137 F.3d 1045; 28 U.S.C. § 2254(e). This court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." Marshall, 459 U.S. at 432.

Additionally, the state habeas court found that Mr. Anderson's trial counsel exercised trial strategy when he was careful to not create undue sympathy for KH, a minor victim of sexual abuse by Anderson (a 63-year-old perpetrator), with his cross-examination. Docket 13-13 at p. 6. Decisions involving trial strategy are "virtually unchallengeable." Link, 469 F.3d at 1204.

Having reviewed the trial transcripts, the state habeas transcript, and the written decision of the state habeas court, this court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not

38

unreasonably apply federal law. It is therefore recommended that Mr. Anderson's second claim for relief be denied and that no certificate of appealability be issued.

### 3. Third Claim For Relief: Ineffective Assistance Of Counsel For Failing To Test CD Interview For Tampering.

This claim is stated in Docket 1 at p. 16. During the state habeas hearing, Mr. Anderson explained that he believed the CD which contained his recorded interview with law enforcement had been tampered with. HT at 32-33, 48-51, 53-54. Mr. Anderson believed the beginning of the interview, which consisted of a conversation with Detective Frerichs in which Detective Frerichs suggested Mr. Anderson pushed KH away, had been deleted. Id. Mr. Anderson theorized "if a guy wanted sexual contact, why would he push him away?" HT at 50.

Mr. Anderson's trial counsel discussed this subject during the state habeas hearing. HT 10. He asked the state's attorney whether there were any further interviews of Mr. Anderson, but the state's attorney denied any further interviews. Id. Trial counsel also questioned the Detective Russell during the jury trial about whether Mr. Anderson's recorded interview had been edited. JT at 59. Detective Russell denied the interview had been edited. Id. Trial counsel did not believe there were any anomalies with the recorded interview, and he did not have the CD independently tested for tampering. HT 10-11.

The state habeas judge discussed this claim at page five of his written opinion. Docket 13-13, p. 5. The state habeas judge listened to the CD and

did not discern any irregularities.[8] Id. The state habeas judge noted that the
entire CD was not played for the jury, because it merely contained "dead" time
which represented the time that one officer sat in the car while the other officer
summoned Mr. Anderson from the front door of his home, before the interview
in the vehicle began. Id.

The state habeas judge observed that even assuming Mr. Anderson's
theory was true (i.e. that part of the recorded interview was missing, and that
missing part consisted of Detective Frerichs suggesting to Mr. Anderson that
Mr. Anderson had pushed KH away), the discovery of the missing portion
would not have made any difference in Mr. Anderson's case. Docket 13-13 at
p. 6.

Though Detective Frerichs did not testify at trial, Detective Russell did.
JT 58-59. Detective Russell explained that law enforcement often uses an
interview technique designed to suggest to the defendant his guilt may be
minimized due to the circumstances in order to get the him to admit to the
offense. Id. But in this instance, Mr. Anderson made no admissions. "Even if
there had been other instances on the tape where the detective made
suggestions to minimize Anderson's guilt in an unsuccessful effort to get him to
admit to the offense, that is merely cumulative and this court doesn't believe it
would have had any effect on the ultimate decision by the jury." Docket 13-13
at 6. The state habeas court concluded that Mr. Anderson offered mere
speculation that the recorded interview had been tampered with and that

---

[8] The CD was not provided to this court.

40

whatever he believed had been omitted would have changed the outcome of his trial. Id.

This court agrees. Assuming the contents of the CD contained Detective Frerichs suggesting to Mr. Anderson that Mr. Anderson pushed KH away, that is not enough to grant habeas relief. Detective Russell explained at trial that such "minimizing" interview techniques are often used in an effort to get the subject to admit what really happened.[9] If the allegedly lost portion of Mr. Anderson's interview with Detective Frerichs were found, it would prove nothing except that the technique did not work in this instance, because Mr. Anderson never admitted to sexual contact.

Mr. Anderson offers nothing but speculation that the allegedly deleted portion of the recorded interview would have made any difference whatsoever in the minds of the jurors. This is simply inadequate to "undermine confidence in the outcome." Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (citing Strickland, 466 U.S. at 694). Having reviewed the trial transcripts, the state habeas transcript, and the written decision of the state habeas court, this court finds the South Dakota State court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. It is therefore recommended that Mr. Anderson's third claim for relief be denied and that no certificate of appealability be issued.

---

[9] Even if Detective Frerichs lied to Mr. Anderson on the allegedly deleted part of the recorded interview, the Eighth Circuit has explained this interview technique is proper so long as it is not did not overcome Mr. Anderson's will. Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001).

41

## 4. Fourth Claim For Relief: Ineffective Assistance Of Counsel For Failing To Introduce Medical Evidence Regarding Erectile Dysfunction.

This claim is stated in Docket 1, p. 16. Mr. Anderson did testify briefly about his erectile dysfunction during his criminal trial. JT 76. He explained that "nothing works" so he does not think about sex or worry about it. Id. He did not, however, offer expert testimony to verify his testimony.

During the state habeas hearing, Mr. Anderson explained he suffered from erectile dysfunction. HT 40. He had been treating for that condition with a doctor at the Veteran's Administration for several years before KH's allegations. Id. He asked his trial attorney to speak with his VA physician about the condition. HT 41.

When asked to explain how he thought his erectile dysfunction would affect the criminal charges against him, Mr. Anderson explained:

I thought it was a given factor. There was no erection. There was no desire. There was no sexual contact, period. That's why I couldn't understand how they would try—how they could prove sexual contact, either.

HT at 41.

Then, when asked to explain his understanding of the term sexual gratification, he said "to climax, to ejaculate." HT at 52. He further elaborated that in his opinion (not what his lawyer told him), that sexual contact meant "sexual contact is sexual gratification was ejaculation? Sexual contact is having sex with somebody." Id.

Mr. Anderson's trial attorney also testified at the state habeas hearing about this claim. HT 15-16. The trial attorney explained he had gone to great

42

lengths to contact Mr. Anderson's treating physician at the VA to discuss the effect of Mr. Anderson's erectile dysfunction upon the criminal charges he was facing. Id. When the physician finally spoke to Mr. Anderson's attorney, the physician indicated in no uncertain terms that erectile dysfunction **does not** preclude sexual desire. The trial attorney did not call the medical witness "because we didn't want that testimony coming into trial." HT 16.

The state habeas judge discussed this claim on page seven of his written decision. Docket 13-13, p. 7. He explained Mr. Anderson's physician would not have been a helpful witness. Id. The state habeas judge then carefully explained that physical sexual ability is not necessary to form the intent required for the physical acts necessary to commit the crime with which Mr. Anderson had been charged and convicted. Id. (citing People in the Interests of W.Y.B., 515 N.W.2d at 455). See also Yellow Hawk, 314 F. Supp. 2d at 933-34) (counsel not ineffective for failing to procure evidence of his client's impotence when impotence would not have proven he was incapable of the sex crime with which he was charged).

In considering ineffective assistance claims, the court addresses not what is prudent or appropriate, but only what is "constitutionally compelled." Whitmore, 8 F.3d at 631). Mr. Anderson must show more than his trial counsel's alleged error had "some conceivable effect on the outcome of the proceeding because not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. (quoting Strickland, 466 U.S. at 693).

43

Mr. Anderson's counsel was not ineffective for failing to call a medical expert to testify about Mr. Anderson's erectile dysfunction, because any such testimony would have been wholly unhelpful to Mr. Anderson's case. Having reviewed the trial transcripts, the state habeas transcript, and the written decision of the state habeas court, this court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. It is therefore recommended that Mr. Anderson's fourth claim for relief be denied and that no certificate of appealability be issued.

## 5. Fifth Claim For Relief:  Ineffective Assistance Of Counsel For Failing To Call Other Children As Character Witnesses.

This final claim is stated in Docket 1, p. 16. Only four witnesses testified at Mr. Anderson's criminal trial:  Mr. Anderson, Detective Russell, KH, and KH's mother. See, Docket 13-2 at p. 2. Mr. Anderson testified during the state habeas hearing that other children had worked for him in the past. HT 38. He asked his trial counsel to contact these children and interview them. HT at 39. His trial counsel did not follow through with that request. Id.

Mr. Anderson's trial counsel also testified at the state habeas hearing about this issue. HT 14. Trial counsel recalled that Mr. Anderson offered the names and contact information for the other children. Id. Trial counsel understood that Mr. Anderson wished him to interview these children and possibly call them to testify on Mr. Anderson's behalf as character witnesses. HT at 24. Counsel explained, however, that his usual practice is to avoid calling character witnesses in criminal trials because he does not want to "open the door" for the State to call their own negative character witnesses against

44

his client. HT at 24. He would not consider calling character witnesses unless he could determine absolutely no negative character witnesses existed. Id.

In Mr. Anderson's case, counsel could not confirm the absence of negative character witnesses because during discovery, the State filed a notice of its intent to introduce evidence of Mr. Anderson's prior bad acts. HT 25. The State intended to introduce evidence similar claims had been made against Mr. Anderson several years ago. Id. Trial counsel filed an objection to the notice and a pre-trial hearing was held to keep the evidence out of trial. HT 25. See also Docket 13-21. Trial counsel prevailed in keeping the prior bad acts evidence out, so he thought it would be poor strategy to create the opportunity for the State to get the evidence back into the trial by calling character witnesses on behalf of Mr. Anderson. Id.

The state habeas judge addressed this claim on page seven and eight of his written decision. Docket 13-13, pp. 7-8. He began his analysis by acknowledging that whether to call a particular witness is almost always a strategic decision which is entitled to great deference. Id. (citing Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001). The state habeas judge also recognized that Mr. Anderson could not prevail on this claim without showing what these witnesses would have said, and that their testimony would have changed the outcome of his trial. Id. at p. 8. The state habeas judge noted that in general, character evidence is inadmissible under South Dakota law. (citing SDCL § 19-12-4 and SDCL § 19-12-7). Id.

Finally, the state habeas judge acknowledged that had trial counsel allowed Mr. Anderson's proposed character witnesses to testify, the result would have likely been more harmful than helpful because it would have opened the door to the State's other bad acts evidence. As such, the state habeas judge concluded Mr. Anderson's trial counsel's performance was not deficient under Strickland. Id.

In assessing ineffective assistance claims under the Strickland standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy." Staples, 410 F.3d at 488. The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." Id.

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense." Strickland, 471 F. Supp. 2d at 617. Instead, to prove prejudice, Mr. Anderson must show that the uncalled witness would have testified in his defense, that his testimony would have been favorable, and that his testimony "probably would have changed the outcome of the trial." See Lawrence, 900 F.2d at 130; Stewart, 31 F.3d at 744. Mr. Anderson has not made any showing whatsoever to this court about what the content of his proposed character witnesses' testimony would have been, let alone that it would have probably changed the outcome of his trial.

More importantly, counsel's strategic decision to forego calling character witnesses is entitled to great deference. Staples, 410 F.3d at 488. This is

especially true here, where the circumstances as they appeared to counsel at the time indicated the State had some powerful ammunition to fire through any door which might be opened by the presentation of character witnesses on Mr. Anderson's behalf. Because Mr. Anderson cannot meet either prong of Strickland, this court agrees with the state habeas court that this final ineffective assistance claim must fail.

Having reviewed the trial transcripts, the state habeas transcript, and the written decision of the state habeas court, this court finds the South Dakota state court made factual findings that were fairly supported in the record and it did not unreasonably apply federal law. It is therefore recommended that Mr. Anderson's fifth claim for relief be denied and that no certificate of appealability be issued.

## CONCLUSION

Based on the foregoing law, facts, and analysis, this court respectfully recommends that respondents' motion to dismiss [Docket No. 14] be granted, that petitioner Donald Anderson's motion for summary judgment [Docket No. 11] be denied, and his habeas petition be dismissed **with prejudice**.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the

47

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>,

781 F.2d 665 (8th Cir. 1986).

      DATED this _6th_ day of April, 2016.

                BY THE COURT:

                VERONICA L. DUFFY
                United States Magistrate Judge